The first case to be argued is 03-50195, United States v. Daniel. Each side has ten minutes. Good morning. Good morning. May it please the Court, Fred Rowley, Jr., Criminal Appeals Section for the Government. I'd like to try to reserve two minutes of my time for rebuttal. Sure. The district court below departed downward on the ground that at the time the defendant unlawfully possessed a firearm, he was making efforts to avoid commission of a crime. The government submits that that departure was wrong for three main reasons. First, the facts of this case fall squarely within the heartland of felon in possession offenses. The statute of conviction, 922G1, and the applicable guideline here, 2K2.1, both punish felons for possessing firearms regardless of how long they possess them or why they possess them. The statute and the applicable guideline are both intended to keep guns out of the hands of people who are more likely to use them. And that policy concern applies here with full force. So you're arguing at this point that even if we were to accept the finding of fact that he was trying to get rid of the gun, that doesn't matter? That's exactly right, Your Honor. That's right. The policy concerns underlying the statute and the guideline apply here if you look at the facts in their totality. First, the defendant was caught on the street with a firearm on his person. The gun was concealed in his jacket pocket. The gun had four rounds loaded. And at the time the police caught the defendant, he was attempting to evade the police. In addition, I would note that the defendant acknowledged below that he had been drinking that day. Regardless of why the defendant had the gun or what he intended to do with it, those facts raise just the sort of public safety concerns that Congress and the Commission had in mind when it enacted the applicable provisions. Suppose they caught him with a welding torch or something trying to dismantle the gun, take it apart or throw it into the river or something of that sort. Would that change it? That would be a much closer case, Your Honor, and it would be closer to the Van Leer decision that the defense has relied upon. But even in that scenario, the government would submit that a downward departure wouldn't be appropriate, and here's why. If you look at Section 2K2.1 and read that provision in conjunction with the policy statement governing lesser harms, 5K2.11, those two provisions read together suggest that the Commission did not intend to permit downward departures in felon and possession cases for felons who possess guns based upon their reasons for possessing them, innocent purposes, in other words. And that is really the reasoning of the D.C. Circuit's decision in Riley, which is the decision that the government submitted, one of the two decisions the government submitted in its Rule 28J letter. So as an initial matter, the government would submit that that wouldn't be an appropriate basis for a departure. The government acknowledges that that would be much closer, a much closer case. It would be more analogous to the Van Leer decision. But that decision is not applicable here for a couple of reasons, just on the facts alone. First, the defendant in Van Leer actually dispossessed himself of the firearm. And, of course, the defendant in this case did not do that. Despite having a clear opportunity to get rid of the gun, the defendant continued to hold on to it. He had been paid $300, the agreed-upon price for selling the gun. He took the gun and left. So on that basis alone, Van Leer is distinguishable. More opposite to this case is the Bristow decision, which is the second decision cited in the government's Rule 28J letter. That decision comes out of the Eleventh Circuit. There, the defendant, like the defendant here, was under financial pressure. The defendant had bills to pay. He took his father's unloaded and lawfully-possessed firearm and took it to a pawn shop and pawned it there. The defendant sought an innocent possession departure. He was arguing at sentencing that the reason he had the gun was an innocuous one, and therefore, he ought to deserve – he was deserving of lenient treatment. The district court concluded, based upon 2K2.1, that it was without discretion to depart. The court of appeals affirmed on a slightly different rationale. The court focused on the fact that the defendant's reason for possessing the gun was an economic one. He was under financial pressure. And sentencing commission in Section 5K2.12 specifically precluded financial difficulties like unpaid bills as a basis for departure. That's what we have here. The defendant's immediate purpose in selling the gun, and this was a point that the defense argued at sentencing below, was to get money. Apparently, the defendant and his wife planned to move out of town, and he needed the money. That's a precluded factor under the guidelines. And just to get back to Judge Silverman's question, again, about whether a departure would be appropriate in that scenario, 2K2.1 actually addresses innocent possession In 2K2.1, Section B.2, the commission established a downward adjustment, an adjustment to offense level six, if the defendant possessed a gun for a lawful sporting or for a collection purpose. But the commission specifically precluded prohibited persons, like felons, from benefiting from that downward adjustment. That provision, together again with lesser harms, with the lesser harms provision, suggests that the commission didn't extend, didn't intend to extend departures based upon innocent possession to defendants. I'm sorry. Well, actually, innocent possession, I'm not sure what you mean. If he were standing on the street corner minding his own business and someone ran up to him and stuck a gun in his waistband and ran off, he wouldn't be guilty of the offense, right? I mean, he'd have a defense to the crime. That's not a guidelines issue. He has a defense to the substantive charge. Well, I think, Your Honor, that what the commission intended to address there, and if you look at the examples in the lesser harms provision, they pertain to prohibited objects, objects that are barred because of the harm they might do and how they might be used. But even the examples in the lesser harms provision don't actually involve prohibited persons, people who are barred from having firearms regardless of what their purpose  is, because, again, the harm. You would agree with me on my hypothetical, the person wouldn't be guilty of the offense. That would be tough. I mean, it would be – Well, suppose – You'd just have to say that the defendant knowingly, you know, even knowingly or intentionally possessed the firearm in that situation. We don't even get to the guidelines. That guy's not guilty of the crime. I believe that would be right, Your Honor. But as the Riley Court noted, if you look at the examples in the lesser harms provision, which is really the provision that Van Leer relied upon, those examples don't involve prohibited persons. They involve prohibited objects. And that's why the sort of departure that the district court made here was inappropriate. It was undisputed below that this defendant didn't actually relinquish control of the firearm. He didn't transfer it to Corey Kramer, even though Corey Kramer paid him the money. So what the departure comes down to is that he had the intent, purportedly at some point, to get rid of the gun. And that isn't enough to support a downward departure the government submits. Turning briefly to an issue flagged in the answering brief, the Rule 32 issue, the notice issue, the government submits that that's not an issue on appeal. The government is the only appealing party. It has not included that in its issues for which it is seeking relief. And the government submits that that's not an issue properly before the court. And with that, I will reserve my time. Thank you, Mr. Rowley. Good morning, and may it please the Court. I'm James Laughlin, and I represent the appellee John Daniel. I'd like to start off with the issue that the government left with, and that's the Rule 32 violation. I believe this case should be remanded to the district court for an open resentencing. The district court granted the departure on a ground that had not been raised by anybody prior to the hearing. And, in fact, he didn't announce the basis for his departure. Did you file a cross-appeal? No, I didn't, Your Honor. Aren't you required to do so if you're going to assert an appeal on that basis? When I read the government's brief, I was wondering even now what my basis for filing a cross-appeal on that would be, that we got a departure that we don't dispute, but we should have had more facts to get it. To me, it seems odd in that circumstance to file a cross-appeal. But if, perhaps in the future, that's the best way to deal with the situation. But I think that's the case. Did you preserve the claim in any way? No. And I'd like to point out that neither did the government. And I think that the government's trying to play a little game here by saying, well, we're not we didn't object to the lack of notice in the district court. We're not raising the issue on appeal, and yet we want the court to look at this very small, narrow group of facts to make the decision as to whether this is an appropriate departure. And I think that's the case. And I think that the court should acknowledge that this case is in a very unique procedural posture because of the PROTECT Act. This case would not have been appealed under abusive discretion standard. I doubt that it would have been. And I think that the court should acknowledge that things are going on differently now in district court sentencing.  The really full and complete record that addresses every possible fact of concern addressing a departure wasn't as important because a noble review by the court of appeals wasn't contemplated. Now it is, and things are being – hopefully the court is seeing things being done differently where it's getting more facts than it used to. But in hindsight, clearly Mr. Daniels should have made an objection and asked for time to present more facts to support the record – the departure that the government – that the court said it was going to impose. But for the time being, all I'm asking for is an open remand – a remand for an open resentencing so the court can just deal with all of these issues for the first time in light of what the standards are now. That will give the court the opportunity to address this departure. And the case law is clear that such a departure is appropriate, as pointed out in Van Leer and the case that Van Leer relies on, the Eighth Circuit's decision in U.S. v. Lewis. Now, I acknowledge that the – one of the cases that was pointed out in the government's Rule 28J letter, Bristow, conflicts with those cases, and it's – there's no way to reconcile them. They're basically all the same case. The person takes temporary possession of a weapon to pawn it for money. The Bristow case, I think, is just completely wrongly decided by focusing on the economic motive of the defendant to pawn the gun. I think what the district court did in Van Leer and what the Eighth Circuit did in Lewis is more appropriate. They focus on the fact that the typical felon in possession is not trying to get rid of his weapon, absent some fear of the police are going to break down their door and they want to just get rid of that or other contraband. And when a person has transitory possession of a weapon and is giving it up, that person, while still guilty of being a felon in possession, is not as culpable as the felon who has a gun and has no plans on giving it up. Because your guy didn't give it up. All he did was take the money, leave with the money and the gun. Right. And facts in the records suggest that he did it because he was nervous, and the court apparently credited that, that he didn't – he wasn't trying to rob Mr. Corey, and he ultimately at some point was going to go through the – with the sale. The problem is, again, because this was something that the judge brought up right at the time the sentence was imposed, there was no opportunity to bring out facts that might flush out whether or not the factors noted in Van Leer and Lewis are applicable. Does it make a difference – excuse me. Does it make a difference if he's trying to avoid the commission of a crime on the one hand and simply trafficking in a gun on the other hand? I don't – I don't think that – I know that the government down below argued that this was an illegal transaction, and while they've never pointed to any statutes which say this is an illegal transaction, we have no idea if Mr. Kramer has anything that would prevent him from possessing a weapon. I don't think that that factor is relevant to the question of whether or not this person, this felon in possession, is less culpable than another felon in possession. And the – I think because the key has to be on the behavior that constitutes what's being a felon in possession. Does this turn on whether or not we think that the district court's factual finding was clearly erroneous? Because the district court credited the testimony that he was – that the defendant was trying to dispose of the gun, even though there are facts in the record that suggest that perhaps he was just trying to get some money and then run off with the gun. But if his – if the district court's determination is correct that he was attempting to dispose of the gun, then what? We apply the law of Van Leer and see if those circumstances present were – support the departure in this case? Yes. And I'd also like to address the first part of your question, too, which is whether this fact is clearly erroneous. I don't think that this Court can find that the fact is clearly erroneous. Under Anderson v. Bessemer City, the law is clear. It's only if the facts – the factual findings are implausible in light of the record. Here what you have is you have Mr. Daniel making a statement to the police officers, which is presented to the Court. He didn't testify, though, right? He did not testify. He – there is a supporting letter, a declaration from his mother and a letter from his wife, which all say he was planning on selling the gun. And the Court chose to credit all that. The only thing in the evidence that contradicts that was – were the statements that Mr. Kramer initially made to the police, but then never followed up on. He – one, he lied about being a friend. He told the police he was a stranger. I was robbed by a stranger. It turns out he was actually a friend they'd been drinking with all day. And second, when it came time to press the case, he disappeared. So I think that the – that the Court can't take that evidence and say that that's such overwhelming evidence contradicting the course of actual finding that this is a rare case where it can find such a finding to be clearly erroneous. Well, Mr. Lawson, I think what you're – what you really want in this case is a remand for open sentencing so you can – well, I guess you'd like an affirmance, but other than that, if we're going to do anything, you'd like a remand for open resentencing, I think you said, so you can put on whatever evidence it is that might bolster an appropriate finding by the district court. Correct, Your Honor. And I think that if the Court determines that it wants to reverse the departure that the district court granted, I don't think it should preclude the court – the court should allow the district court to decide whether to present relevant evidence on the matter that it believes are relevant to the question of whether such a departure can be appropriate, and then allow the district court in the first instance to decide the matter after giving the parties adequate opportunity to present relevant evidence on those criteria. And then the other thing I think the Court should be allowed to do on remand, and I don't think that the government is – is objecting to this anymore, is that the district court should be allowed to consider the departure request that Mr. Daniel made in the district court that was never ruled on. I think the government now concedes that the Protect Acts amendments to 3742 do not preclude the court from reconsidering that. But they're not retroactive? Those provisions are not retroactive. They – they took the – the government took the position in the opening brief that they were. In their reply brief, they just took the position that this Court doesn't need to issue an opinion on that. And in my Rule 28J letter to the Court, I pointed out that the other circuit courts who have decided this issue have decided that it would be inappropriate to apply those provisions on remand. The one thing the government does say with respect to that departure is, well, this Court should preclude the judge from ruling on that requested departure because the district court's silence below is all – should be considered an affirmative denial. And – and I don't think – I think there's two problems with that. One, where you have here a situation where a judge grants a departure on one ground, which makes another requested departure moot, his refusal to reach that issue should not be constituted as a denial. Obviously, things are going to be different now under the Protect Act, where the Court really has the obligation to rule on each and every departure, or it may never be able to do so. But at the time of Daniel's sentencing, that wasn't a requirement. And then the second problem with the government's approach is, the requested departure is only relevant if this Court ends up reversing the departure that was granted and remanding to the district court for resentencing anyway. If that happens, there's no harm to giving – putting the issue back in front of the district court. If the government is right and he meant to deny it all along, the Court will make that clear on the record. If the government's wrong and we're right that the Court just never reached that issue because it didn't think it had to, well, then it can decide for the first time whether or not the departure applies. Unless the Court has any further questions, I'd submit.  Thank you, Mr. Laughlin. Laughlin. Thank you. Roberts. Mr. Crowley, you have two minutes left. Crowley. Your Honor, I must make clear at the outset that the government is not conceding that the Protect Act – that applying the limited remand provision in the Protect Act here would create procedural due process problems. The government's position is, though, that there's no reason to reach that issue because a remand in this case should be limited. In the exercise of the Court's discretion, as the Matthews decision itself acknowledges, this Court can exercise its discretion to remand for limited and focused issues. And we usually don't do that except with the Protect Act. That's right, Your Honor. It isn't the usual practice, but it's an appropriate thing to do here because there are no departures that would be warranted on these facts. Quickly, to address the point about a remand provision. On these facts, you mean with the business about getting rid of the gun? That or also the only other alternative departure that was identified by the defendant below, which was the departure to address his – the time that he served in State custody on the revocation sentence. That wouldn't be an appropriate basis for departure either, and here's why. The conviction in this case is premised – The district court never ruled on that. Well, Your Honor, the district court did not depart on that ground. And under this Court's prior decisions, the government would submit that the best thing to do is to treat that as a discretionary denial. And that would be appropriate because in order to justify a departure for what amounts to a concurrent sentence, although the defendant had already served his time in State custody, by subtracting it from the Federal sentence, it essentially treats it as concurrent. And that would not be appropriate here because the defendant's crime of conviction is being a felon in possession of a firearm. It can hardly be deemed unusual or extraordinary for a felon to be under supervision, whether that be parole or supervised release. That departure simply wouldn't – wouldn't be proper. Isn't it our law that if – that the district court must acknowledge that he has – that he either doesn't have or he does have a legitimate basis for departure, and then if he does have a ground for departure, indicate that in an exercise of discretion that he's not going to grant the departure? Your Honor, I believe that there are – there is a line of cases that – that deals with that kind of question and treats it as a discretionary denial. And we would dismiss for lack of jurisdiction. That's right, Your Honor. But if he hasn't ruled at all, we – we don't know what he's done, whether we dismiss for lack of jurisdiction or whether we affirm or reverse. I mean, we just don't know. I agree that this case is a little different. It's a little different because in the cases that Your Honor is referring to, the district court did depart. He just departed on a different ground, on ground other than the one that the defendant was urging. So it is, as Your Honor points out, a slightly different scenario. Thank you very much, Mr. Rowley. Mr. Laughlin, thank you. The matter does start you to submit it. I thought counsel were very well prepared in that argument. Yes. Thank you, Mr. Laughlin. You did well. 0355537 Landy.
judges: Thompson, Silverman, Wardlaw